Joseph J. Tabacco, Jr. (75484)
Christopher Heffelfinger (118058)
Matthew Pearson (235339)
**BERMAN DeVALERIO PEASE TABACCO
BURT & PUCILLO**
425 California Street, Suite 2100
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

*E-filing*

**Attorneys for Plaintiff and Class**

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

REIKO HIRAI, on behalf of herself and
all others similarly situated,

                Plaintiffs,

      v.

AIR NEW ZEALAND, ALL NIPPON
AIRWAYS, CATHAY PACIFIC AIRWAYS,
CHINA AIRLINES, EVA AIRWAYS, JAPAN
AIRLINES, INTERNATIONAL, MALAYSIA
AIRLINES, NORTHWEST AIRLINES,
QANTAS AIRWAYS, SINGAPORE
AIRLINES, THAI AIRWAYS, and
UNITED AIRLINES,

                Defendants.

No.

CV 08 1453

**CLASS ACTION COMPLAINT** CRB

JURY TRIAL DEMANDED

    Plaintiff Reiko Hirai, on behalf herself and all others similarly situated, hereby brings this action for treble damages and injunctive relief under the federal antitrust laws of the United States, Section 1 of the Sherman Act, 15 U.S.C. § 1 ("Sherman Act") and Sections 4 and 26 of the Clayton Antitrust Act of 1914, 15 U.S.C. §§ 15, 26 ("Clayton Act") against Defendants. Plaintiff complains and alleges upon information and belief, except as to those paragraphs applicable to the named Plaintiff which are based on personal knowledge, as follows:

CLASS ACTION COMPLAINT                                                 1

## I.    NATURE OF THE CASE

1.     This is an antitrust class action arising from a global conspiracy among certain airlines to fix, raise, maintain, and/or stabilize prices for long haul passenger trans-pacific flights to and from the United States ("Passenger Air Transportation"), and for fixed fuel surcharges on this transportation ("Fuel Surcharges") in violation of Section 1 of the Sherman Act. Fuel Surcharges are fees charged by airlines to passengers, purportedly to compensate the airlines for increased fuel costs.

2.     Plaintiff brings this action to recover treble damages and injunctive relief on behalf of all persons and entities that at any time during the period from January 1, 2004 to the present (the "Class Period") purchased Passenger Air Transportation to and from the United States from any of the Defendants and their co-conspirators or any predecessor, subsidiary, or affiliate of each.

3.     At all times relevant herein, Defendants provided air transportation services and sold Passenger Air Transportation, and charged fixed Fuel Surcharges on that transport, to airline passengers in the United States and throughout the world, including but not limited to flights to and from Los Angeles and to and from San Francisco, California. Los Angeles International Airport ("LAX") and San Francisco International Airport ("SFO") are considered the international U.S. gateways to Asian and Pacific countries.

4.     As further alleged herein, during at least the Class Period, Defendants agreed, combined, and/or conspired with each other to fix, raise, maintain, and/or stabilize the prices of Passenger Air Transportation and Fuel Surcharges thereon. As a result of defendants' unlawful conduct and conspiracy, Plaintiff and the other members of the Class paid artificially high prices for Passenger Air Transportation and Fuel Surcharges, and have been damaged as a direct and proximate result thereof.

## II.    JURISDICTION AND VENUE

5.     This Complaint is brought under Section 4 and 16 of the Clayton Act, 15 U.S.C. §§ 6(a), 15 and 26, to obtain injunctive relief and to recover treble damages and costs of suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiff and

CLASS ACTION COMPLAINT                                                                 2

1  the members of the Class by reason of the violations of Section 1 of the Sherman Act, 15 U.S.C. §

2  1.

3       6.    The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337,

4  and Sections 4 and 16 of the Clayton Act, 15 U.S.C. § 15 and 26.

5       7.    This Court has *in personam* jurisdiction over each of the defendants because each

6  was engaged in an illegal price-fixing scheme and conspiracy that was directed at and/or caused

7  injury to persons and entities residing in, located in, or doing business in the Northern District of

8  California and throughout the United States.  Defendants' conduct had a direct, substantial and

9  reasonably foreseeable effect on U.S. commerce.

10      8.    Venue is proper in this district pursuant to 15 U.S.C. § 22 and 28 U.S.C. §1391(b),

11  (c), and (d) because during the Class Period many of the Defendants resided, transacted business,

12  was found, or had agents in this district, and because a substantial part of the events giving rise to

13  Plaintiff's claims occurred, and a substantial portion of the affected trade and commerce described

14  below has been carried out in, this district.

15  **III.    PARTIES**

16      **A.    Plaintiff**

17      9.    Plaintiff Reiko Hirai ("Plaintiff" or "Hirai"), is a resident of the state of Minnesota.

18  Plaintiff purchased Passenger Air Transportation and paid Fuel Surcharges thereon from a

19  Defendant during the Class Period and has suffered pecuniary injury as a result of the antitrust

20  violations alleged herein.

21      **B.    Defendants**

22      10.   Defendant **Air New Zealand** is a New Zealand company with its principal place of

23  business at Quay Tower, 29 Customs St. West, Auckland, 1020, New Zealand.  Air New Zealand

24  conducts Passenger Air Transportation throughout the world, including into the U.S. and

25  especially California.

26      11.   Defendant **All Nippon Airways** is a Japanese company with its principal place of

27  business at Shidome-City Center, 1-5-2, Higashi-Shimbashi, Minato-ku, Tokyo 105-7133, Japan.

28

CLASS ACTION COMPLAINT                                                                    3

1  All Nippon Airways conducts Passenger Air Transportation throughout the world, including into

2  the U.S. and especially California.

3      12.    Defendant **Cathay Pacific Airways** is a Hong Kong-based company with its

4  principal place of business at 9 Connaught Road, Central Swirel Housepox Box 1 GPO, Hong

5  Kong K3.  Cathay Pacific Airways conducts Passenger Air Transportation throughout the world,

6  including into the U.S. and especially California.

7      13.    Defendant **China Airlines** is a Taiwanese company with its principal place of

8  business at 131 Nanking E Rd., Section 3, Taipei, Taiwan.  China Airlines conducts Passenger Air

9  Transportation throughout the world, including into the U.S. and especially California.

10     14.    Defendant **EVA Airways** is a Taiwanese company with its principal place of

11  business at 16F0I, No. 207, Fusing Road, Taoyuan City, Taoyuan County, Taiwan.  EVA Airways

12  conducts Passenger Air Transportation throughout the world, including into the U.S. and

13  especially California.

14     15.    Defendant **Japan Airlines International** is a Japanese company with its principal

15  place of business at 4-11, Higashi-Shinagawa 2-chome, Shinagawa-Ku, Tokyo 140-8605, Japan.

16  Japan Airlines International conducts Passenger Air Transportation throughout the world,

17  including into the U.S. and especially California.

18     16.    Defendant **Malaysia Airlines** is a Malaysian corporation with its principal place of

19  business at MAS Complex A, Sultan Abdul Azia Shah Airport, 47200 Suband, Selangor Darui

20  Ehsan, Malaysia.  Malaysia Airlines conducts Passenger Air Transportation throughout the world,

21  including into the U.S. and especially California.

22     17.    Defendant **Northwest Airlines** is a Delaware corporation with its principal place of

23  business at 2700 Lone Oak Parkway, Eagan, MN 55121.  Northwest Airlines conducts Passenger

24  Air Transportation throughout the world, including into the U.S. and especially California.

25     18.    Defendant **Qantas Airways** is an Australian company with its principal place of

26  business at Building A, 203 Coward Street, Qantas Centre, Mascot NSW 2020 C3, Australia.

27  Qantas Airways conducts Passenger Air Transportation throughout the world, including into the

28  U.S. and especially California.

CLASS ACTION COMPLAINT                                                              4

19.    Defendant **Singapore Airlines** is a Singapore company with its principal place of business at Airline House, 25 Airline Road, 819829 Singapore.  Singapore Airlines conducts Passenger Air Transportation throughout the world, including into the U.S.

20.    Defendant **Thai Airways** is a Thailand company with its principal place of business at 89 Vibhavadi-Rangsit Road, Bangkok, Thailand 10900.  Thai Airways conducts Passenger Air Transportation throughout the world, including into the U.S. and especially California.

21.    Defendant **United Airlines** is a Delaware corporation with its principal place of business at 77 W. Wacker Drive, Chicago, IL 60601.  United Airlines is one of the largest passenger airlines in the world with more than 3,600 flights a day to more than two hundred destinations.  United Airlines conducts Passenger Air Transportation throughout the world, including into the United States, especially San Francisco International Airport, where United Airlines operates a hub and maintenance operation center.  United Airlines is the largest employer in San Mateo County, California, which is located within this district.

**C.    Unnamed Co-Conspirators and Agents**

22.    At all relevant times, other airlines, trade groups, or other entities, willingly conspired with Defendants in their unlawful restraint on trade.  All averments herein against named Defendants are also averred against these unnamed co-conspirators as though set forth at length.  The acts alleged to have been done by Defendants were authorized, ordered or done by their directors, officers, agents, employees, or, representatives while actively engaged in the management of each of the Defendants' affairs.

**IV.    TRADE AND COMMERCE**

23.    Throughout the Class Period, there was a continuous and uninterrupted flow of Passenger Air Transportation in international commerce throughout the United States and especially into and out of Los Angeles and San Francisco.  Defendants' unlawful activities, as described herein, took place within the flow of commerce to Passenger Flight customers throughout the world, and had a direct, substantial and reasonably foreseeable effect upon interstate and international commerce in the United States.

CLASS ACTION COMPLAINT                                                              5

## V.    CLASS ACTION ALLEGATIONS

24.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

> All individuals or entities (excluding governmental entities, Defendants, and their parents, predecessors, subsidiaries, affiliates, and their co-conspirators) who purchased air passenger transportation for trans-pacific flights and who paid a fuel surcharge on their tickets from any of the Defendants and their co-conspirators or any predecessor, subsidiary, affiliate of each at any time from January 1, 2004 to the present.

25.    Because such information is in the exclusive control of Defendants, Plaintiff does not know the exact number of Class members. Due to the nature of the trade and commerce involved, however, Plaintiff believes that Class members number at least in the thousands and are sufficiently numerous and geographically dispersed throughout the United States and the world so that joinder of all Class members is impracticable. It is estimated that there were more than 15 million air passengers traveling across the Pacific out of commercial California airports in 2006.

26.    There are questions of law and fact common to the Class, including:

a.    Whether Defendants engaged in a combination and conspiracy among themselves to fix, raise, maintain and/or stabilize trans-Pacific Passenger Air Transportation and Fuel Surcharges prices effecting commerce in the United States and throughout the world;

b.    The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by Defendants in furtherance of the conspiracy;

c.    Whether the alleged conspiracy violated Section 1 of the Sherman Act;

d.    Whether the conduct of Defendants, as alleged in this Complaint, caused injury to the business or property of Plaintiff and other members of the Class;

e.    The effect of Defendants' conspiracy on the Passenger Air Transportation and Fuel Surcharge prices charged in the United States and throughout the world during the Class Period; and

f.    The appropriate measure of damages sustained by Plaintiff and other members of the Class.

27.    Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of other Class members, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff purchased Passenger Air Transportation and Fuel Surcharges from one or more Defendants and her interest is aligned with, and not antagonistic to, those of the other members of the Class. Plaintiff is represented by counsel competent experienced in the prosecution of antitrust and class action litigation.

28.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

29.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would engender.

30.    Class treatment will also permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint.

31.    This class action presents no difficulties in management that would preclude its maintenance as a class action. Finally, the Class is readily definable and is one for which records of the names and addresses of the members of the Class exist in the files of Defendants.

## VI.    FACTUAL ALLEGATIONS

### A.    Fuel Costs In Air Passenger Transportation

32.    Defendants controlled a vast majority of Passenger Air Transportation during the Class Period with their dominant combined market share. Passenger flight customers had no alternative suppliers from which to shop for Passenger Air Transportation during the Class Period. This permitted Defendants to reap enormous profits from the Fuel Surcharges.

33.    In addition, Fuel Surcharges were often treated by Defendants and other carriers similar to a tax or other surcharge, such as an airport facility charge or a government mandated

CLASS ACTION COMPLAINT                                                    7

1    September 11 security charge.  As such, Fuel Surcharges were not always advertised as part of

2    Defendants' fares, and were added on to the base fare as part of the purchase transaction.

3        34.    Because surcharges generally are designed to compensate for increased external

4    costs, they should bear a relatively constant relationship to external cost levels.  Thus, in a

5    competitive market, Fuel Surcharges should rise and fall at relatively constant ratios to the

6    associated jet fuel costs.  Since their inception in 2004, the ratio of Defendants' Surcharges to

7    external costs has increased steadily.  The Fuel Surcharges bore no relationship to the Defendants'

8    actual fuel costs or fuel cost increases.

9        35.    The ratio of Defendants' profits to external costs was therefore quite high due to the

10   concerted implementation and maintenance of the agreed-upon Passenger Air Transportation and

11   Fuel Surcharge price levels.  So despite increased fuel costs during the Class Period, Defendants'

12   Surcharges were actually responsible for substantial profit growth for Defendants.

13   **B.    Defendants And The Passenger Air Transportation Market**

14       36.    Each Defendant possesses significant market share on their routes of travel.  The

15   Defendants principally compete with one another in the Passenger Air Transportation market.

16       37.    Passenger Air Transportation is a commodity product that is fungible in the sense

17   that Passenger Air Transportation provided by any one airline is readily substitutable for the

18   Passenger Air Transportation provided by any other airline.

19       38.    Passenger Air Transportation is a homogenous service sold by airlines, including

20   Defendants, to airline customers, including Plaintiffs and the members of the Class, primarily

21   based on price.

22       39.    The Passenger Air Transportation market in the United States and worldwide is

23   highly concentrated, and there exists substantial barriers to entry in this market; both factors

24   facilitate the implementation and maintenance of a horizontal price-fixing cartel such as that

25   perpetrated by Defendants and alleged herein.

26       40.    Generally, surcharges are a feature of the global air transportation market, in which

27   airlines charge extra fees to their customers, above and beyond basic flight rate charges, with the

28   intent of defraying certain external costs of the carriers.

CLASS ACTION COMPLAINT                                                                            8

41.    Beginning in 2004, Defendants agreed to act in concert with one another in demanding the Surcharges to defray fuel costs and agreeing when and how much to increase the Surcharges to their Passenger Flight customers.

42.    Defendants were aware that their imposition of Fuel Surcharges and other surcharges would not be successful if their supposed competitors did not join them; otherwise, customers would be free to seek out lower prices.  For this reason, Defendants entered into agreements to raise surcharges at the same times and in the same amounts.

43.    But for Defendants' Passenger Air Transportation conduct, Defendants would have been unable to increase the prices of their Fuel Surcharges to the extent that they did.

44.    The collusion of Japan Airlines International and All Nippon Airways ("ANA") is representative of the behavior of the other Defendants.  Japan Airlines International and ANA agreed to raise and lower fares on nearly always the same dates and were in lockstep on surcharges for transpacific fares:

| | |
|---|---|
| June 8, 2004, ANA files a notice with the Japanese government to raise IATA international fares, in the wake of increased fuel prices, to and from Japan, effective **July 1**, 5% hike, exception North America economy fares, but not business class. | June 8, 2004, Japan Airlines files a notice with the Japanese government to raise international fares, in the wake of increased fuel prices, to and from Japan, effective **July 1**, 5% hike, exception North America economy fares, but not business class. |
| January 5, 2005, ANA announces it will add fuel surcharges on international fares on **February 1**.  The surcharges for transpacific flights were 2,500 yen. | January 20, 2005, Japan Airlines announces it will add fuel surcharges on international passenger fares on **February 1**.  The surcharges for transpacific flights were 2,500 yen. |
| June 3, 2005, Japan Airlines files a notice with the Japanese government to raise its international fuel surcharge effective **July 1**. | June 7, 2005, ANA files a notice with the Japanese government to raise its international fuel surcharge effective **July 7**. |

| | | |
|---|---|---|
| 1 | January 16, 2006, Japan Airlines files a | January 23, 2006, ANA files a notice with the |
| 2 | notice with the Japanese government to raise | Japanese government to raise its international |
| 3 | its international fuel charge effective | fuel surcharge, effective **March 1**. |
| 4 | **March 1**. | |
| 5 | | |
| 6 | August 17, 2006, Japan Airlines files a | August 31, 2006, ANA files a notice with the |
| 7 | notice with the Japanese government to raise | Japanese government to raise its international |
| 8 | its international fuel surcharge, effective | fuel surcharge, effective **October 15**, from 8,000 |
| 9 | **October 1**, from 8,000 yen to 13,600 yen | yen to 13,600 yen ($66 to $113). |
| 10 | ($66 to $113). | |
| 11 | | |
| 12 | November 16, 2006, Japan Airlines files a | November 16, 2006, ANA files a notice with the |
| 13 | notice with the Japanese government to | Japanese government to reduce the fuel |
| 14 | reduce the fuel surcharge in international | surcharge on international passenger fares |
| 15 | passenger fares effective **January 1**, | effective **January 1**, lowering the surcharge |
| 16 | lowering the surcharge from 13,600 yen to | from 13,600 yen to 13,000 yen ($113 to $108). |
| 17 | 13,000 yen ($113 to $108). | |
| 18 | | |
| 19 | March 19, 2007, Japan Airlines files a notice | March 20, 2007, ANA files a notice with the |
| 20 | with the Japanese government to reduce the | Japanese government to reduce the fuel |
| 21 | fuel surcharge on international passenger | surcharge on international passenger fares |
| 22 | fares effective **May 1**, to 11,000 yen or $91. | effective **May 1**, to 11,000 yen or $91. |
| 23 | | |
| 24 | May 15, 2007, Japan Airlines files a notice | May 25, 2007, ANA files a notice with the |
| 25 | with the Japanese government to raise the | Japanese government to raise the fuel surcharge |
| 26 | fuel surcharge on international passenger | on international passenger fares effective |
| 27 | fares effective **July 1**, from 11,000 yen or | **July 10**, from 11,000 yen or $91 to 12,000 yen or |
| 28 | $91 to 12,000 yen or $100. | $100. |

CLASS ACTION COMPLAINT                                                    10

| | |
|---|---|
| August 15, 2007, Japan Airlines files a notice with the Japanese government to raise the fuel surcharge on international passenger fares effective **October 1**, from 12,000 yen or $100 to 13,000 yen or $108. | August 20, 2007, ANA files a notice with the Japanese government to raise the fuel surcharge on international passenger fares effective **October 1**, from 12,000 yen or $100 to 13,000 yen or $108. |

45.    Other defendants did likewise.  United Airlines, for example, charged a surcharge in line with Japan Airlines International and All Nippon Airways.  From July 10, 2007 to October 1, 2007 Japan Airlines International and All Nippon Airways had their fuel surcharge on international passenger fares transpacific set at 12,000 yen or $100.  United Airline's surcharge as of August 16, 2007 was also $100.

### C.    Trade Organizations and Alliances

46.    Defendants' executives, as well as other air carriers' executives, met formally or informally over the years at various trade meetings or meetings of trade associations, such as the International Air Transport Association, the Association of Asian Pacific Airlines ("AAPA"), Oneworld, Star Alliance and SkyTeam Alliance.  At one or more of these meetings Defendants conspired to artificially inflate Fuel Surcharges on international Passenger Air Transportation.

47.    Ten of the defendants are members of AAPA.  AAPA has its origins in a meeting of Asian airline executives in 1965 to discuss regional cooperation.  The following year, Philippine Airlines, China Airlines, Korean Airlines and Malaysian Airlines officially formed the Orient Airlines Research Bureau.  In 1996 the Association changed its name to the AAPA.

48.    All of the defendants are members of the Geneva-based International Air Transport Association ("IATA"), which was founded in 1945 in Havana, Cuba.  IATA represents more than 240 airlines comprising 94% of scheduled international air traffic.   It describes itself as "the prime vehicle for inter-airline cooperation."  Some or all Defendants reached an agreement at an IATA meeting in Geneva on May 24, 2004 with respect to  Fuel Surcharges.

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT                                                                                    11

**Trade Organization/Alliance members by airline:**

### Air New Zealand

Member of the Association of Asia Pacific Airlines
Member of the Star Alliance
Member of the International Air Transport Association

### All Nippon Airways

Member of the Association of Asia Pacific Airlines
Member of the Star Alliance
Member of the International Air Transport Association

### American Airlines

Member of Oneworld
Member of the International Air Transport Association

### Cathay Pacific Airways

Member of the Association of Asia Pacific Airlines
Member of Oneworld
Member of the International Air Transport Association

### China Airlines

Member of the Association of Asia Pacific Airlines
Member of the International Air Transport Association

### EVA Airways

Member of the Association of Asia Pacific Airlines
Member of the International Air Transport Association

### Japan Airlines International

Member of the Association of Asia Pacific Airlines
Member of Oneworld
Member of the International Air Transport Association

### Malaysia Airlines

Member of the Association of Asia Pacific Airlines
Member of the International Air Transport Association

### Northwest Airlines

Member of the SkyTeam Alliance
Member of the International Air Transport Association

### Qantas Airways

Member of the Association of Asia Pacific Airlines
Member of Oneworld
Member of the International Air Transport Association

**Singapore Airlines**

Member of the Association of Asia Pacific Airlines
Member of the Star Alliance
Member of the International Air Transport Association

**Thai Airways**

Member of the Association of Asia Pacific Airlines
Member of the Star Alliance

**United Airlines**

Member of the Star Alliance
Member of the International Air Transport Association

49.     Various defendants are in effect business partners with each other through what is called "code sharing."  Code sharing is a business term which was first originated in 1990 when Qantas Airways and American Airlines combined services between an array of U.S. and Australian cities.   Code sharing is a legal business arrangement.   However, it provides a mechanism to conduct illegal activity.

50.     A code share is part of a "cooperative services" agreement between the two carriers. It refers to the practice where a flight operated by an airline is jointly marketed as a flight for one or more other airlines.   Most major airlines today have code sharing partnerships with other airlines.

51.     The following are the code sharing partnerships of the defendants listed alphabetically:

Air New Zealand / EVA Airways

Air New Zealand / Qantas (Tasman route)

Air New Zealand / Japan Airlines International

Air New Zealand / Northwest Airlines

Air New Zealand / Singapore Airlines

Air New Zealand / Thai Airways

Air New Zealand / United Airlines

All Nippon Airways / Asiana Airlines

All Nippon Airways / EVA Airways

CLASS ACTION COMPLAINT                                                                                      13

1   All Nippon Airways / Malaysia Airlines

2   All Nippon Airways / Singapore Airlines

3   All Nippon Airways / United Airlines

4   Cathay Pacific Airways / American Airlines

5   Cathay Pacific Airways / Japan Airlines International

6   China Airlines / American Airlines

7   China Airlines / Thai Airways

8   EVA Airways / Air New Zealand

9   EVA Airways / American Airlines

10   EVA Airways / All Nippon Airways

11   EVA Airways / Qantas

12   EVA Air / American Airlines

13   Japan Airlines International / Air New Zealand

14   Japan Airlines International / American Airlines

15   Japan Airlines International / Cathay Pacific

16   Japan Airlines International / Korean Air

17   Japan Airlines International / Northwest Airlines

18   Japan Airlines International / Qantas Airlines

19   Japan Airlines International / Singapore Airlines

20   Japan Airlines International / Thai Airways

21   Malaysia Airlines / All Nippon Airways

22   Malaysia Airlines / Thai Airways

23   Northwest Airlines / Air New Zealand

24   Northwest Airlines / Asiana Airlines

25   Northwest Airlines / Japan Airlines International

26   Northwest Airlines / Korean Air

27   Qantas Airways / Air New Zealand

28   Qantas Airways / American Airlines

CLASS ACTION COMPLAINT                                                           14

Qantas Airways / EVA Airways

Qantas Airways / Japan Airlines International

Singapore Airlines / Air New Zealand

Singapore Airlines / Asiana Airlines

Singapore Airlines / All Nippon Airways

Singapore Airlines / Malaysian Airlines

Singapore Airlines / United Airlines

Thai Airways / Air New Zealand

Thai Airways / China Airlines

Thai Airways / Japan Airlines International

Thai Airways / Malaysia Airlines

Thai Airways / United Airlines

United Airlines / Air New Zealand

United Airlines / All Nippon Airways

United Airlines / Asiana Airlines

United Airlines / Singapore Airlines

United Airlines / Thai Airways

52.     Over the years, executives of Defendant airlines have attended numerous meetings where cartel-like activity was accomplished.   Here are a few examples of meetings where executives discussed and agreed on Fuel Surcharges:

**The International Air Transport Association, Special Meeting, Geneva, May 28, 2004:**

53.     Fuel costs were the main topic of this meeting and there were agreements on how to add surcharges for fuel.  The Montreal Gazette reported on June 1, 2004, that "member carriers of the International Air Transport Association might raise international fares by as much as five percent to help cover a surge in jet fuel costs.  The proposed fare increase of between two percent and five percent was agreed at a May 28 meeting of the association, which represents more than 270 airlines worldwide, an IATA spokesperson said."

CLASS ACTION COMPLAINT                                                                    15

**The International Air Transport Association Annual General Meeting and World Air Transport Summit, June 6-8, 2004, Singapore:**

54.    More than 600 airline executives attended this annual summit.  Giovanni Bisignani, IATA CEO said in a welcoming statement, "While record high fuel prices challenge our profitability it is time to put our efforts toward rebuilding the industry."  Immediately following this meeting on June 8, 2004 both Japan Airlines International and All Nippon Airways filed applications with the Japanese government to raise international passenger fares because of high fuel costs.  In a news release announcing the Fuel Surcharge hike, Japan Airlines International said:

> "The application follows a special meeting of the members of the International Air Transport Association in Geneva, May 28, (2004) when a resolution was discussed to raise fares in the wake of increased fuel prices.  This resolution has now been adopted."

Japan Airlines International and All Nippon Airways were in lockstep on June 8, 2004, both announcing on that day that a five percent Fuel Surcharge would go into effect, on the same day for both airlines, July 1, 2004.

**2005 International Flight Services Association, Global Leadership Conference – Asia Pacific, August 30 - September 1, 2005, Tokyo, Japan:**

55.    This meeting was labeled as "The Challenge of Change."  Among the participants were, Makoto Fukada, Managing Director and Senior Vice President International Passenger, Japan Airlines; Sandra Pineau, Senior Director of Planning and Design, Continental Airlines; Charles Grossrieder, a manager at Cathay Pacific Airways; Nikom Raviyan, Vice President, Thai Airways; Sandeep Bahl, General Manager, Norwest Airlines, Shigeru Miyata, Vice President, Japan Airlines; Kriengsakdi Phatharacharukul, Director, Thai Airways; and Hee Won Jo, Senior Manager, Asiana Airlines.

**2nd Annual Asia Pacific & Middle East Aviation Outlook Summit 2006, December 5-6, 2005, Kuala Lumpur, Malaysia:**

56.    The theme of this meeting was "Towards Best Practice; Maximising Revenues and Minimising Costs."  On the first day of the meeting, the guests included Dato Seri Bashir Ahmad, Malaysia Airport's CEO; Willy Boulter, Commercial Director for Virgin Atlantic Airways; and

1    Stanley Kuppusamy, President, International Relations, Singapore Airlines.  Fuel surcharges were

2    a topic of discussion.

3    **Aviation Emergency Response 2006, AAPA sponsored, September 19-21, 2006,**
     **Bangkok, Thailand:**

4

5    57.    This meeting was attended by international airport officials and AAPA member

6    executives.  Meetings were held on increasing revenues in the transpacific area by way of Fuel

7    Surcharges and other financial means.

8    **3rd Annual Asia Pacific & Middle East Aviation Outlook Summit,**
     **November 9-10, 2006, Singapore:**

9

10   58.    Participating in this meeting were executives from most of the Defendant airlines,

11   including Geoff Dixon, CEO of Qantas and Huang Cheng Eng, Executive VP for Singapore

12   Airlines.   One of the issues presented and discussed was *"Fighting Costs: Fuel prices and*

13   *managing risk exposure."*

14   **AAPA Forum, November 28-29, 2006, Bandar Seri Begawan, Brunei Darussalam:**

15   59.    More than 120 aviation industry stakeholders attended this meeting, organized by

16   AAPA.  At this meeting, Defendants and others discussed surcharges.

17   **Asia Pacific Aviation Summit, July 24-25, 2007, Sydney, Australia:**

18   60.    This meeting was put on by the Asia Pacific aviation industry.  Some of the issues

19   discussed included the impact of the investigation by the U.S. Department of Justice into fare price

20   fixing.  Another topic was "working together efficiently" to diffuse the investigation of added

21   surcharges.

22   **D.    Governmental Investigations**

23   61.    The U.S. Department of Justice ("DOJ") started investigating air passenger fuel

24   surcharge conspiracies worldwide in 2006, particularly transatlantic routes and transpacific routes

25   to and from the West Coast.  The DOJ announced on August 1, 2007 a $300 million settlement

26   with British Airways and it cited passenger transatlantic routes.  In its news release, the DOJ said:

27   "The Department also charged that between August 2004 and February 2006, British Airways

28   engaged in a conspiracy to suppress and eliminate competition by fixing the Fuel Surcharge

CLASS ACTION COMPLAINT                                                          17

1  charged to passengers on long-haul international flights, including flights between the United

2  States and the United Kingdom."

3        62.    The DOJ also focused on transpacific flights to and from the United States, noting

4  that investigation is "ongoing" and includes other Defendants named herein.

5        63.    The DOJ also announced a settlement with Korean Air for fare price fixing on

6  flights from the United States to Korea. The DOJ stated that Korean Air has "agreed to cooperate

7  with the Department's ongoing investigation." Korean Air's unnamed co-conspirator in the

8  passenger fare price fixing via Fuel Surcharges was widely reported to be Asiana Airlines, which

9  sought amnesty.

10        64.    Under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, a

11  company can apply for leniency from the Department of Justice for its participation in antitrust

12  activities. Under the so-called Corporate Leniency Program, if a company comes forward with

13  information about antitrust activities and cooperates in the investigation, it is eligible for

14  conditional amnesty from prosecution.

15        65.    Both Korean Air and Asiana Airlines are among the top transpacific carriers in the

16  world. It was not the first time Korean Air and Asiana Airlines have been implicated in collusion

17  and anticompetitive behavior. The Korean Fair Trade Commission fined Korean Air and Asiana

18  Airlines in 2001 for conspiring to set passenger air transportation services in Korea.

19        66.    In addition, several of the Defendants and unnamed co-conspirators have been

20  identified as targets and or subjects in international investigations by the U.S. Department of

21  Justice and the European Union into air cargo fuel surcharge price fixing. The targets, many of

22  which are also named in civil suits, include Defendant All Nippon Airways, American Airlines,

23  Asiana Airlines, Defendant Japan Airlines, Korean Airlines, Defendant Northwest Airlines,

24  Defendant Qantas Airways and Defendant United Airlines. In both the air passenger and cargo

25  investigations, Defendants and other airlines are accused of developing and participating in

26  conspiracies to increase revenue by assessing inflated Fuel Surcharges.

27        67.    On February 14, 2008, Thai Airways admitted that the European Union had lodged

28  a formal complaint against it also for allegedly colluding in an air freight cartel.

CLASS ACTION COMPLAINT                                  18

## VII.    ADMISSIONS BY CO-CONSPIRATORS

68.    On August 13, 2007, Qantas Chief Executive Officer Geoff Dixon announced that Qantas Airways would set aside $40 million to cover a potential fine in the United States as a result of Fuel Surcharges and price fixing in its freight division.    In a news release, Dixon was quoted as saying:

> On 1 August 2007, the U.S. Department of Justice announced that British Airways and Korean Air had agreed to plead guilty and pay separate US$300 million criminal fines for their roles in conspiracies to fix prices of passenger and cargo flights.    British Airways subsequently announced that US$200 million of its fine related to cargo.    Based on these developments, a decision has been made to make a US$40 million (A$47 million) provision in the 2006/07 Financial Accounts.

Dixon also was quoted as saying:

> We have investigated this issue thoroughly and are confident that the unacceptable conduct was limited to a small number of people.

69.    On October 6, 2007, the Japanese daily newspaper *Asahi Shimbun* reported that Japan Airlines International would book a roughly $171 million charge for potential fines from a global price fixing probe by U.S. and European Union officials.    The newspaper said:

> The company's move comes after the U.S. Justice Department fined British Airways PLC and Korean Air Lines Co. $300 million each in August for fixing the prices of passenger and cargo flights with other airlines.    The companies allegedly conspired to set fuel surcharges when oil prices rose.

## VIII.    FRAUDULENT CONCEALMENT

70.    Throughout the relevant period, Defendants affirmatively and fraudulently concealed their unlawful conduct from Plaintiff and the Class.

71.    Plaintiff and the members of the Class did not discover, and could not discover through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as alleged herein until shortly before this litigation was commenced.    Nor could Plaintiff and members of the Class have discovered the violations earlier than that time because Defendants conducted their conspiracy in secret, concealed their activities through various other means and methods designed to avoid detection.    The conspiracy was by its nature self-concealing.

CLASS ACTION COMPLAINT                                                                  19

72.    Plaintiff and the members of the Class could not have discovered the unlawful conduct at an earlier date through the exercise of reasonable diligence because of Defendants' active and purposeful concealment of their unlawful activities.

73.    Defendants engaged in a successful, illegal price-fixing conspiracy with respect to Surcharges and other fees, which they affirmatively concealed, in at least the following respect:

- By agreeing among themselves not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme;

- By engaging in secret meetings and telephone call in order to further to illicit Passenger Air Transportation and Fuel Surcharge cartel; and/or

- By giving false and pretextual reasons for their pricing for Passenger Air Transportation and Fuel Surcharge thereon, and their increases, during the relevant period and by describing such pricing and increases falsely as being the result of external costs rather than collusion.

74.    As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiff and the Class assert the tolling of any applicable statute of limitations affecting the rights of action of Plaintiff and the members of the Class.

## CLAIM FOR RELIEF

### (For Violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act)

75.    Plaintiff realleges and incorporates each and every allegation set forth above as if fully set forth herein.

76.    From a date unknown, but at least from January 2004, Defendants and their co-conspirators have combined, conspired and/or contracted to restrain interstate trade in violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act.

77.    The contract, combination or conspiracy has resulted in an agreement, understanding or concerted action between and among Defendants in furtherance of which Defendants instituted, fixed, maintained, raised or stabilized prices for trans-Pacific Passenger Air

CLASS ACTION COMPLAINT                                                          20

1   Transportation.  Such contract, combination, or conspiracy constitutes a per se violation of the

2   federal antitrust laws and is an unreasonable and unlawful restraint of trade.

3        78.    Defendants' contract, combination, agreement, understanding or concerted action

4   occurred in or affected interstate and international commerce.  Defendants' unlawful conduct was

5   through mutual understandings or agreements by, between and among Defendants.

6        79.    The contract, combination or conspiracy has had the following effects:

7             a.    Prices charged to Plaintiff and the class for trans-Pacific Passenger Air

8   Transportation were raised, fixed, maintained or stabilized at higher, artificially derived,

9   noncompetitive levels;

10            b.    Plaintiff and the Class have been deprived of the benefits of free, open and

11  unrestricted competition in the market for trans-Pacific Passenger Air Transportation; and

12            c.    Competition in establishing the prices paid for trans-Pacific Passenger Air

13  Transportation been has been unlawfully restrained, suppressed and eliminated.

14            d.    As a proximate result of Defendants' unlawful conduct, Plaintiff and the

15  Class have suffered injury in that they have paid supra-competitive prices for trans-Pacific

16  Passenger Air Transportation.

17       80.    In furtherance of the unlawful conspiracy, upon information and belief, each of the

18  Defendants and their co-conspirators has committed overt acts including *inter alia*:

19            a.    Agreed to charge prices at certain levels and otherwise to fix, increase,

20  maintain or stabilize prices of trans-Pacific Passenger Air Transportation sold in the United States;

21            b.    Communicating with co-conspirators regarding prices to be charged for

22  trans-Pacific Passenger Air Transportation;

23            c.    Meeting with co-conspirators in order to keep the existence of the

24  conspiracy unknown so as to foster the illegal anti-competitive conducted described herein;

25            d.    Refraining from competition by refusing to offer trans-Pacific Passenger Air

26  Transportation at prices below the agreed-upon fixed price; and

27            e.    Sold trans-Pacific Passenger Air Transportation at agreed-upon prices.

28

CLASS ACTION COMPLAINT                                                              21

81.    Defendants and their co-conspirators engaged in the activities described above for the purpose of effectuating unlawful arrangements to fix, maintain, raise and/or stabilize prices of trans-Pacific Passenger Air Transportation.

82.    Defendants' anti-competitive agreement was implemented by, *inter alia*, a series of coordinated price increases, in the form of fuel surcharges, that began in early 2004.  These coordinated price increases continued on a regular basis through the present, with the actual and intended result that Plaintiff and members of the Class paid supra-competitive prices for trans-Pacific Passenger Air Transportation.  Defendants falsely attributed these price increases to increases in input costs such as energy.  As a direct and proximate result of the trans-Pacific Passenger Air Transportation price-fixing conspiracy, Defendants have restrained competition in the trans-Pacific Passenger Air Transportation market and injured Plaintiff and each Class member in their business and property in that they have each paid a higher price for Passenger Air Transportation than they would have paid absent the concerted unlawful activity.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that:

1.    The Court determine that this action may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

2.    The Court adjudge and decree that the contract, combination and conspiracy alleged herein is a per se unreasonable restraint of trade in violation of Section 1 of the Sherman Act; Judgment be entered against Defendants, jointly and severally, and in favor of Plaintiff and the Class as allowed by law as determined to have been sustained by them;

3.    Each of the Defendants, successors, assigns, parents, subsidiaries, affiliates, and transferees, and their respective officers, directors, agents, and employees, and all other persons acting or claiming to act on behalf of Defendants or in concert with them, be permanently enjoined and restrained from, in any manner directly or indirectly continuing, maintaining, or renewing the combinations, conspiracy, agreement, understanding or concert of actions, or adopting any practice, plan, program, or design having similar purpose or effect in restraining competition;

CLASS ACTION COMPLAINT

4.      The Court award Plaintiff and the Class attorneys' fees and cost, and pre- and post-judgment interest, as permitted by law; and

5.      The Court award Plaintiff and the Class such other and further relief as the case may be necessary and appropriate.

## JURY TRIAL DEMAND

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

Dated: March 14, 2008

**BERMAN DeVALERIO PEASE TABACCO BURT & PUCILLO**

By:_____

Christopher T. Heffelfinger

Joseph J. Tabacco, Jr.
Matthew Pearson
425 California Street, Suite 2100
San Francisco, CA 94104
Telephone: (415) 433-3200

Manuel J. Dominguez
Esperante Building, Suite 900
222 Lakeview Avenue
West Palm Beach, FL 33401
Telephone: (561) 835-9400

Daniel E. Gustafson
Daniel C. Hedlund
Sungyun K. Smith
**Gustafson Gluek PLLC**
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
(612) 333-8844

W. Joseph Bruckner
**Lockridge Grindal Nauen P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900

Dianne M. Nast
**RodaNast, P.C.**
801 Estelle Drive
Lancaster, PA 17601
Telephone: (717) 892-3000

CLASS ACTION COMPLAINT                                                                 23

Joseph Goldberg
**Freedman Boyd Hollander Goldberg
& Ives, P.A.**
20 First Plaza, Suite 700
Albuquerque, NM 87102
Telephone: (505) 842-9960

Hunter Shkolnik
**Rheingold, Valet, Rheingold, Shkolnik &
McCartney, LLP**
113 East 37th Street
New York, NY 10016
Telephone: (212) 684-1880

Richard J. Arsenault
**Neblett Beard & Arsenault**
2220 Bonaventure Court
P.O. Box 1190
Alexandria, LA 71309
Telephone: (800) 256-1050

Nicholas J. Drakulich (No. 098135)
**The Drakulich Firm, APLC**
2727 Camino del Rio South, Suite 322
San Diego, CA 92108
Telephone: (868) 755-5887

**Attorneys for Plaintiff and Class**

CLASS ACTION COMPLAINT

24